# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DAVID BOLYARD,**
**Claimant Below, Petitioner**

**FILED**
**June 27, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)  No. 25-ICA-14**          (JCN: 2002048281)

**TRI-STATE PHYSICIAN MANAGEMENT, INC.,**
**Employer Below, Respondent**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER, in its capacity as administrator of The Old Fund,**
**Respondent**

## MEMORANDUM DECISION

Petitioner David Bolyard appeals the December 11, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Tri-State Physician Management, Inc., did not file a response. Respondent West Virginia Offices of the Insurance Commissioner in its capacity as administrator of the Old Fund ("Old Fund") timely filed a response.[1] Mr. Bolyard filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied Mr. Bolyard's request to reopen the claim for an additional permanent partial disability ("PPD") evaluation.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The compensable injury in this case occurred on March 12, 2002, when Mr. Bolyard fell eight feet after the ladder he was using buckled at a construction site, and he struck his head on the concrete below. On the date of the injury, Mr. Bolyard was admitted to Washington County Hospital.

---

[1] Mr. Bolyard is self-represented. Old Fund is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Tri-State Physician Management did not appear.

Mr. Bolyard underwent several CT scans while at Washington County Hospital. A CT scan of his head revealed very small bilateral subdural hematomas overlying the anterior medial frontal lobes; small subcentimeter hemorrhagic contusions in the anterior medial left frontal lobe; and hemorrhagic opacification of the left frontal sinus secondary to frontal bone fracture. A CT scan of the cervical spine revealed that the cervical spine was intact, and a minimally displaced fracture of the proximal posterior left 1st rib. A CT scan of the facial bones revealed nondisplaced fractures of the anterior aspect of the lateral wall of the left orbit and anterior medial roof of the left orbit. A CT scan of the head revealed no change in the appearance of the contents of the cranium with a noted small anterior bilateral subdural hematoma and a small parenchymal hemorrhage in the left side in the frontal lobe, and fluid density was noted in most of the paranasal sinuses, possibly representing inflammatory disease.

M.J. Yacyk, D.O., treated Mr. Bolyard on March 14, 2002, while he was hospitalized. The impression was closed head injury with small bilateral subdural hematomas and hemorrhagic contusion, facial fractures, and multiple cognitive deficits primarily with memory and orientation. Mr. Bolyard was referred to physical therapy, occupational therapy, and speech therapy. On March 15, 2002, Mr. Bolyard was discharged from Washington County Hospital. The discharge diagnosis was multiple facial fractures, cerebral concussion, and bilateral subdural hematoma.

On April 12, 2002, the claim administrator issued an order that held the claim compensable for closed fracture of ribs and injury to the head/neck. On June 26, 2002, the claim administrator issued an order that indicated that close skull VLT fracture, sprain/strain thoracic, sprain/strain shoulder, non-allopathic lesion cervical, cervicobrachial syndrome, and close fracture of ribs were primary and secondary conditions in the claim.

By order dated September 10, 2002, the claim was closed for temporary total disability benefits ("TTD") on the basis that Mr. Bolyard had returned to full time employment.

On April 10, 2003, neuropsychologist Joseph Grady, M.D., evaluated Mr. Bolyard, who reported cognitive dysfunction, particularly with decreased memory and concentration. Dr. Grady opined that Mr. Bolyard had reached maximum medical improvement ("MMI") for the March 12, 2002, injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Grady determined Mr. Bolyard's impairment rating. Dr. Grady concluded that Mr. Bolyard had 7% WPI for traumatic brain injury. Dr. Grady indicated that Mr. Bolyard did not have signs of permanent impairment for the rib fractures, left shoulder, thoracic spine, or cervical region. He recommended 7% WPI for the compensable injury. The claim administrator issued an order dated May 26, 2003, which granted Mr. Bolyard a 7% PPD award based on Dr. Grady's IME report.

Chuan Fang Jin, M.D., performed an IME of Mr. Bolyard and issued a report dated September 17, 2004. Mr. Bolyard reported tremors when under stress, poor balance, difficulty walking on uneven surfaces, poor memory, and problems with his left shoulder. Dr. Jin's impression was closed head injury with cognitive deficit; multiple rib fractures, lung contusions resolved; left orbital fracture, resolved; left shoulder rotator cuff tear, stable; cervical sprain/strain, resolved; and preexisting degenerative cervical disc disease. Dr. Jin placed Mr. Bolyard at MMI. However, she noted that his cognitive problems may progress.

Using the *Guides*, Dr. Jin determined Mr. Bolyard's impairment rating. She noted that Mr. Bolyard had been asymptomatic and totally recovered from multiple fractures of the ribs, and he did not complain of any respiratory difficulties. Thus, Dr. Jin stated that there is no impairment from the multiple rib fractures and lung contusions. For the left shoulder, Dr. Jin recommended 0% WPI. For cervical sprain/strain, Dr. Jin placed Mr. Bolyard in category IIA of Table 75 on page 113, which allows for 0% WPI. For cervical range of motion, Dr. Jin used Table 76 on page 118, Table 77 on page 120, and Table 78 on page 122 and recommended 0% WPI. For the central nervous system, Dr. Jin used Table 1 on page 141, classified Mr. Bolyard under the first category, and recommended 4% WPI. Dr. Jin recommended 9% WPI for short-term memory deficit with poor concentration and other mental status impairment, based on Table 2 on page 142. For balance and tremors, Dr. Jin recommended an impairment rating of 7% WPI. Dr. Jin combined these impairment ratings for a total recommendation of 18% WPI. On October 27, 2004, the claim administrator granted Mr. Bolyard an 18% PPD award based on Dr. Jin's report.

On May 24, 2004, Mr. Bolyard requested that the claim be reopened for additional temporary total disability ("TTD") benefits. The claim administrator denied this request by order dated June 10, 2004. Mr. Bolyard protested this order. The Office of Judges issued a decision dated April 19, 2005, which affirmed the denial of the reopening. The claim was not reopened for either TTD benefits or PPD benefits thereafter, and no additional conditions were added as compensable in the claim.

On July 9, 2022, Gabriella Szatmary, M.D., examined Mr. Bolyard. Dr. Szatmary stated that the neurological examination was essentially unremarkable except for a mild anisocoria OD 5mm, OS 4.5mm without ptosis. She indicated that they would repeat his neuropsychology test, and that he should return in six months for a follow-up visit.

On March 2, 2023, Mr. Bolyard requested that his claim be reopened for additional medical treatment. The claim administrator issued an order dated April 26, 2023, which denied the request on the basis that it had been more than five years since Mr. Bolyard

received any medical treatment in the claim.[2] By order dated February 14, 2024, the Board affirmed the claim administrator's order, concluding that the request for reopening for medical consideration was time-barred pursuant to West Virginia Code § 23-4-16(a)(4).

On April 9, 2024, Mr. Bolyard sent a letter to the claim administrator that requested he be referred for a PPD evaluation on the basis that the additional diagnosis of traumatic brain injury was added to his claim.[3] On May 9, 2024, the claim administrator issued an order which denied Mr. Bolyard's request to reopen the claim for an additional PPD evaluation on the basis that the claim was statutorily barred for PPD benefits. Mr. Bolyard protested this order to the Board.

On December 11, 2024, the Board issued an order affirming the claim administrator's order denying Mr. Bolyard's request to reopen the claim for an additional PPD evaluation. It is from this order that Mr. Bolyard now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

---

[2] It appears from the record that Mr. Bolyard protested this denial to the Offices of the Insurance Commissioner instead of the Board. Scott Clark issued a letter dated June 13, 2024, which indicated that he received Mr. Bolyard's inquiry concerning the denial of his request for a PPD evaluation. Mr. Clark stated that if Mr. Bolyard disagreed with the order denying an evaluation, he could protest the denial to the Board.

[3] We note that although Mr. Bolyard asserted that he should be referred for a PPD evaluation because traumatic brain injury was newly added to his claim, this condition was already a part of the claim at the time of Dr. Grady's April 10, 2003, IME.

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Bolyard argues that he could never return to work following the compensable injury. Mr. Bolyard also asserts that this claim was improperly closed, and that his request to reopen the claim for a PPD evaluation was wrongfully denied. Further, he asserts that several of the doctors who considered the claim did not recognize that he had a traumatic brain injury. Mr. Bolyard also avers that Dr. Grady wrongly concluded that his rotator cuff was healed.

Upon review, we conclude that Mr. Bolyard has not demonstrated that the Board was clearly wrong in affirming the claim administrator's order, which denied the request to reopen the claim for an additional PPD evaluation. Here, the Board concluded that Mr. Bolyard's request to reopen the claim for consideration of an additional PPD award was statutorily barred by West Virginia Code § 23-4-16(a)(2) (2005)[4]. It is undisputed that Mr. Bolyard received his initial PPD award by order dated May 26, 2003. Accordingly, Mr. Bolyard had five years from the date of his initial award to file a reopening request for any modification. *See Payne v. U.S. Steel Mining Co., Inc.*, No. 22-ICA-186, 2023 WL 1464100, at *3 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision) (finding that claimant had five years from the date of his initial award to file a reopening request for any modification). That timeframe expired on May 26, 2008. Mr. Bolyard did not file his reopening application until April 9, 2024. Thus, the Board was not clearly wrong in concluding that Mr. Bolyard's request was time-barred.

Further, we note that Mr. Bolyard's assertion that Dr. Grady wrongfully concluded that his rotator cuff was healed is not a proper issue before this Court, as neither the underlying claim administrator's order nor the Board's order addresses a rotator cuff injury. Instead, the sole issue below was Mr. Bolyard's request to reopen the claim for an additional PPD evaluation. Additionally, although Mr. Bolyard argues that the doctors below did not consider that he had a traumatic brain injury, this condition was already a part of the claim at the time of Dr. Grady's April 10, 2003, evaluation, and was the basis for Dr. Grady's recommended 7% PPD award. Thus, traumatic brain injury is not a newly added diagnosis that could warrant an additional PPD evaluation.

Finding no error, we affirm the Board's December 11, 2024, order.

---

[4] West Virginia Code § 23-4-16(a)(2) (2005) provides, in part, "in any claim in which an award of permanent disability was made, any request must be made within five years of the date of the initial award. During that time period, only two requests may be filed."

Affirmed.

**ISSUED:** June 27, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

6